IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2010

## LUIS CASTANON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-C-2056      Seth Norman, Judge**

**No. M2009-01324-CCA-R3-PC - Filed December 8, 2010**

Petitioner, Luis Castanon, filed a petition pursuant to the Post-Conviction DNA Analysis Act of 2001, Tennessee Code Annotated sections 40-30-301-313. Petitioner sought DNA testing of evidence in the trial resulting in his convictions for four counts of aggravated rape and one count of aggravated burglary. The State filed a response in opposition to the petition, and the trial court summarily dismissed the petition, concluding that Petitioner had not satisfied the statutory requirements to authorize DNA testing. In this appeal, Petitioner asserts that the trial court erred by summarily dismissing the petition and by failing to require the State to submit proof that "DNA evidence" no longer existed. After a thorough review of the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Luis Castanon, Tiptonville, Tennessee, *pro se*.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellant, the State of Tennessee.

## OPINION

A detailed summary of the facts which led to Petitioner's convictions can be found in the opinion of this Court in the direct appeal of the convictions. *See State v. Luis Castanon*, M2003-01491-CCA-R3-CD, 2005 WL 544724 (Tenn. Crim. App., at Nashville, Mar. 8, 2005) *perm. to app. denied* (Tenn. Aug. 22, 2005). For the purposes of this appeal, it is sufficient to note that the victim, after coming home in the early morning hours, was

repeatedly raped vaginally, anally, and orally over a period of two hours in her apartment on May 17, 1998, by two men, one of whom was taller than the other. Both men had their faces concealed by wearing pantyhose and underwear on their heads. The shorter of the two men picked up a bottle of grape juice during the period of the rapes. Petitioner's fingerprints matched latent fingerprints lifted from a grape juice bottle as well as latent prints taken from the inside windowsill where entry was made into the victim's apartment through a cut window screen in the victim's bedroom window. DNA testing of semen collected from the victim's neck and hair matched Petitioner's DNA. The victim testified that the shorter of the two men (Petitioner, as evidenced by the shorter man's fingerprints being lifted from the grape juice bottle) ejaculated in the victim's hair and on her neck.

Petitioner testified at trial and admitted that he was inside the apartment during the sexual assaults, but he denied that he had participated in the rapes. He admitted that he got something to drink while in the apartment. He testified that he followed a friend into the front door of the victim's apartment and went into a bedroom where he went to sleep. He awoke and saw his friend's brother sitting in another bedroom. He saw his friend engaged in oral sex with a naked woman, and finally noticed his friend had a knife in his hand. Petitioner claimed that he then became afraid and upset. Petitioner claimed that after his friend forced the woman into the bathroom at knife point, he set off the fire alarm and exited through the victim's bedroom window.

In his petition, Petitioner asserts that "there is no way of determining what method of DNA [a]nalysis was performed of the evidence taken from the victim and Petitioner." Petitioner alleges that only blood was taken from him for DNA testing. He further asserts that samples from the victim for DNA testing were taken from her neck, breast, mouth, and her vaginal and anal areas. Petitioner alleges in the petition that DNA testing resulted in "[c]omplete exoneration" of Petitioner as to tests run on the samples taken from the victim's vaginal, anal, and oral swabs. Petitioner alleges that the only DNA sample taken from the victim which did not exclude Petitioner was the sample taken from the victim's neck. Petitioner alleges that if mitochondrial DNA testing is done to the semen sample taken from the victim's neck and compared with DNA results of Petitioner's semen, the results would "conclusively exonerate" Petitioner.

Petitioner specifically alleges in his petition that he is entitled to relief pursuant to Tennessee Code Annotated section 40-30-305, and he quotes verbatim from that code section, which states in full as follows:

> 40-30-305. **Court order if probable that results would have resulted in a more favorable verdict or sentence.** -- After notice to the prosecution

and an opportunity to respond, the court *may* order DNA analysis if it finds that:

(1)   A reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;
(2)   The evidence is still in existence and in such a condition that DNA analysis may be conducted;
(3)   The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
(4)   The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-305 (italicized emphasis added).

The State's response to the petition, which was not filed until eleven months after the trial court entered an order granting "a reasonable amount of time" to respond, is sparse. The response was filed by the Assistant District Attorney General, and asserted as follows:

(1)  The State presented DNA evidence at the trial of this cause, matching the [Petitioner], Luis Castanon, to the crime;
(2)   The [Petitioner] admitted being present during the rape and the fingerprint evidence and identification by the victim confirmed this;
(3)  According to the Assistant District Attorney General, Pam Anderson, who tried this matter, no DNA evidence is left.

Despite the fact that Petitioner clearly filed his petition *pro se*, the State did not provide a copy of its response to Petitioner, but, according to the certificate of service, sent a copy to counsel who represented Petitioner in his direct appeal from the convictions. The trial court entered an order summarily dismissing the petition on the day after the State's response was filed. The trial court implicitly found that the facts were as alleged by the State in its response and concluded Petitioner was not entitled to relief.

The scope of our review is limited, as the post-conviction court is given considerable discretion in deciding whether Petitioner is entitled to relief under the DNA Act. *See Jack Jay Shuttle v. State*, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *4 (Tenn. Crim. App., at Knoxville, Feb. 3, 2004), *perm. app. denied* (Tenn. Oct. 4, 2004). Therefore, this

Court will not reverse the post-conviction court unless its judgment is not supported by substantial evidence. *Willie Tom Ensley v. State*, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *4 (Tenn. Crim. App., at Nashville, Apr. 11, 2003), *no perm. app. filed*; *see State v. Hollingsworth*, 647 S.W.2d 937, 938 (Tenn. 1983).

When our General Assembly enacted the Post-Conviction DNA Analysis Act of 2001, it placed upon the trial courts of this state the onus to determine if DNA analysis is authorized under the statutory provisions once a petition is filed. Tennessee Code Annotated section 40-30-305 (under which Petitioner filed his petition) provides that the trial court "may" order DNA analysis without a hearing if the trial court finds the factors listed in the statute. DNA analysis is discretionary and *may* be ordered if the trial court finds that the requirements of -304(2), (3), and (4) are met and that "[a] reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction." Tenn. Code Ann. § 40-30-305.

In this case, there is nothing in the trial court's order dismissing the petition which indicates the trial court did anything on its own to ascertain whether or not the statutory factors existed. The skeletal response by the State was followed the very next day by the trial court's order summarily dismissing the petition. We note that both the State's response and the trial court's order imply that one reason Petitioner was not entitled to relief was because there was direct evidence of the victim's identification of Petitioner as one of the rapists; however, the opinion of this Court on direct appeal states that while, shortly after the incident, the victim was shown a photo line-up that included a picture of Petitioner, "she was unable to positively identify anyone."

Nevertheless, we conclude that the petition, as submitted, was properly summarily dismissed. As noted above, one of the factors which must be shown for Petitioner to be entitled to relief under Tennessee Code Annotated section 40-30-305 is that "[a] reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction." Tenn. Code Ann. § 40-30-305(1).

Petitioner alleged in his petition that only the DNA of the semen removed from the victim's neck was linked to him at trial, and that mitochondrial DNA testing of his semen, compared with mitochondrial DNA testing of the semen removed from the victim's neck would exclude him as the donor of that semen. Even accepting this allegation as true (which also assumes a sample of the semen taken from the victim's neck still exists - which is denied by the State's response), Petitioner has not shown the existence of the first factor under Tennessee Code Annotated section 40-30-305.

The victim testified that two men, one short and one tall, came out of her bedroom after she arrived home in the early morning hours and repeatedly raped her over a period of two hours. The shorter assailant, circumstantially identified as Petitioner by his fingerprints on a glass of grape juice and the windowsill where unauthorized entry was made, participated in the sexual assaults upon the victim. At most, if the DNA evidence had shown at trial what Petitioner now asserts it would have shown, the victim's testimony that it was Petitioner's ejaculation which deposited the semen on her neck would have been impeached. It is not reasonably probable that the purported DNA analysis would have rendered Petitioner's verdict or sentence more favorable. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE